Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| JOANA MARY NEGRON ARROYO<br><br>**Recurrida**<br><br>V.<br><br>THOMSON CONSTRUCTION GROUP INC.<br><br>**Peticionaria** | TA2026CE00287 | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Ponce<br><br>Civil Núm. PO2025CV01369<br><br>Sobre: Despido Injustificado (Ley Núm. 80) y Otros |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

**Hernández Sánchez, Juez Ponente**

### RESOLUCIÓN

En San Juan, Puerto Rico, a 10 de marzo de 2026.

El 9 de marzo de 2026, Thompson Construction Group Inc. (Thompson Construction o la peticionaria) compareció ate nos mediante una *Petición de Certiorari* y solicitó la revisión de una *Resolución* que se emitió el 24 de febrero de 2026 y se notificó el 25 de febrero de 2026 por el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI). Mediante el aludido dictamen, el TPI declaró No Ha Lugar la *Moción de Sentencia Sumaria* que presentó Thompson Construction.

Por los fundamentos que expondremos a continuación, declaramos No Ha Lugar la *Moción Urgente en Auxilio de Jurisdicción* […] y ***denegamos*** el recurso de epígrafe.

I.

El 17 de mayo de 2025, la Sra. Joana Mary Negrón Arroyo (señora Negrón o la recurrida) presentó una *Querella* sobre despido injustificado mediante el procedimiento sumario que provee la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, conocida como *Ley de Procedimiento Sumario de Reclamaciones Laborales*, 32 LPRA

sec. 3118 *et seq.* (Ley Núm. 2) contra la peticionaria.[1] Sostuvo que fue contratada por la empresa Thompson Construction como ayudante del "group leader" para trabajar en un proyecto de construcción en Puerto Rico, bajo un término de empleo permanente. Indicó que laboró para dicha compañía durante aproximadamente dos (2) años, devengando un salario mensual aproximado de $2,600. Afirmó que, durante el transcurso de su relación laboral, nunca fue objeto de medidas disciplinarias, ni fue citada ante el Departamento de Recursos Humanos por problemas relacionados con su desempeño o cumplimiento. Por el contrario, aseguró que cumplió adecuadamente con todas sus funciones y obligaciones contractuales, incluyendo su acuerdo de confidencialidad.

Alegó que, el 2 de mayo de 2025, fue despedida bajo el argumento de una "reducción de personal". Sin embargo, argumentó que dicha reducción fue selectiva e injustificada, ya que, según afirmó, la empresa retuvo empleados con menor antigüedad y continuaba operando con múltiples proyectos. Ante ello, planteó que su despido se realizó sin causa justificada, sin la existencia de expediente disciplinario, advertencias previas ni oportunidad de corregir alegadas deficiencias, lo que, a su entender, constituía una violación a la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, conocida como *Ley Sobre Despidos Injustificados*, 29 LPRA sec. 185a *et seq.* (Ley Núm. 80).

Expresó que, como consecuencia de su despido, la empresa únicamente le ofreció una mesada de $600, cantidad que consideraba insuficiente. Expuso que, conforme a lo dispuesto en la Ley Núm. 80, *supra*, la mesada que le correspondía ascendía aproximadamente a $11,400, suma que, según alegó, la empresa se

---

[1] *Véase*, Entrada Núm. 1, SUMAC TPI.

había negado a pagar. En vista de lo anterior, solicitó al TPI que declarara con lugar la *Querella*, ordenara el pago de la mesada reclamada de aproximadamente $11,400, así como el pago de honorarios de abogado equivalentes al 15% de la compensación solicitada, además de costas, gastos e intereses legales, y cualquier otro remedio que en derecho proceda.

En respuesta, el 29 de mayo de 2025, Thompson Construction presentó su *Contestación a Querella*.[2] En esencia, negó sustancialmente las alegaciones en su contra. En particular, sostuvo que la señora Negrón no ocupaba la posición de ayudante de "group leader" ni tenía un empleo permanente, sino que comenzó a trabajar el 1 de enero de 2023 en la posición de "Laborer" en la división de "Finishes", la cual ocupó hasta el 2 de mayo de 2025, fecha en que fue despedida. Asimismo, alegó que el salario de la querellante era de $15.00 por hora, y no el salario mensual alegado en la *Querella*.

Asimismo, negó las alegaciones relacionadas con el desempeño laboral de la recurrida y rechazó que su despido hubiese sido injustificado. Afirmó que la terminación de empleo ocurrió el 2 de mayo de 2025, pero sostuvo que esta respondió a una decisión operacional legítima, consistente en la eliminación de la posición de "Laborer" en la división de "Finishes" como parte de un proceso de reorganización de sus operaciones y modificación de su modelo de negocios, con el propósito de mejorar la competitividad y productividad de la empresa. Aseguró que, la recurrida era la única empleada que ocupaba dicha posición, por lo que su despido fue con justa causa conforme a la ley.

---

[2] *Véase*, Entrada Núm. 4, SUMAC TPI.

Por otro lado, negó adeudar cantidad alguna por concepto de mesada bajo la Ley Núm. 80, *supra,* alegando que el despido estuvo justificado. Indicó que la oferta de $600 mencionada en la *Querella* no correspondía a una mesada legal, sino a una oferta voluntaria de pago transaccional realizada al momento de la terminación del empleo. Por último, negó que procediera la imposición de honorarios de abogado, al sostener que la recurrida no tenía derecho a remedio alguno. Así pues, solicitó al TPI que declarara sin lugar la *Querella* presentada en su contra.

Tras varios trámites procesales, el 10 de diciembre de 2025, Thompson Construction presentó una *Moción de Sentencia Sumaria.*[3] En primer lugar, expuso los hechos que, a su juicio, no estaban en controversia. Luego, manifestó que tanto los hechos incontrovertidos como la evidencia recopilada durante el descubrimiento de prueba demostraban que el despido de la recurrida ocurrió con justa causa. Adujo que, entre los años 2024 y 2025, la empresa llevó a cabo un proceso de reorganización y reducción de personal *bona fide* en sus operaciones en Puerto Rico, como parte de una decisión empresarial dirigida a mejorar la competitividad y productividad del negocio y detener las pérdidas económicas sostenidas.

En ese contexto, afirmó que, desde el inicio de sus operaciones en Puerto Rico en el año 2018, la empresa había acumulado pérdidas aproximadas de $3.5 millones. En particular, indicó que registró pérdidas de $1,046,783.84 durante el año 2024 y $852,857.00 al 31 de octubre de 2025, lo que motivó la adopción de medidas para reestructurar sus operaciones y reducir gastos. Añadió que, como parte de dicho proceso de reorganización, despidió a setenta y siete (77) empleados en Puerto Rico en distintas

---

[3] *Véase*, Entrada Núm. 14, SUMAC TPI.

clasificaciones ocupacionales, incluyendo puestos administrativos, de almacén, de construcción y supervisión. A tales efectos, reafirmó que el despido de la recurrida ocurrió debido a la eliminación de la posición de "Laborer – Finishes", puesto que, según indicó, la recurrida era la única empleada que ocupaba dicha clasificación al momento de su despido. En vista de lo anterior, concluyó que la decisión de reorganizar sus operaciones y reducir personal constituyó una determinación legítima de negocio, amparada por la Ley Núm. 80, *supra*, y que los tribunales no debían evaluar los méritos de tales decisiones empresariales mientras no estuviesen motivadas por discrimen o por mero capricho del patrono.

Asimismo, planteó que en este caso no aplicaba la presunción de despido injustificado, por lo que correspondía a la recurrida probar por preponderancia de la prueba que su despido fue injustificado. Alegó que la recurrida no había cumplido con dicha carga probatoria ni había presentado hechos que sustentaran una causa de acción válida bajo la Ley Núm. 80 *supra*. Por todo lo anterior, solicitó al TPI que dictara sentencia sumaria a su favor y desestimara con perjuicio la *Querella*, al entender que no existía controversia material de hechos y que la empresa no incurrió en violación alguna de la Ley Núm. 80, *supra*.

Ese mismo día, a saber, el 10 de diciembre de 2025, la peticionaria presentó una *Moción Suplementando "Moción de Sentencia Sumaria.*[4] Junto a esta moción, acompañó un documento para suplementar la declaración jurada del vicepresidente y Chief Financial Officer de la empresa como sustento adicional de los hechos núm. 16 y 17, que, a su juicio, no están en controversia.

Posteriormente, el 30 de enero de 2026, la recurrida presentó su *Moción en Oposición a Sentencia Sumaria.*[5] En esencia, reiteró

---

[4] *Véase*, Entrada Núm. 16, SUMAC TPI.
[5] *Véase*, Entrada Núm. 22, SUMAC TPI.

que mantuvo una relación laboral continua con la empresa, sin recibir señalamientos disciplinarios, y que durante su empleo realizaba funciones similares a las de otros empleados que permanecieron laborando para la compañía. Sostuvo, además, que su despido no obedeció a una reorganización *bona fide*, sino a una decisión selectiva que ignoró el principio de antigüedad. No obstante, cabe señalar que, la recurrida no cumplió con los requisitos establecidos en la Regla 36.3(c) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3 (c) ya que, aunque aceptó los hechos propuestos núms. 1, 2, 3, 7, 8 y 9, no se pronunció sobre los hechos 10 al 19 propuestos por la peticionaria.

Ese mismo día, a saber, 30 de enero de 2026, el TPI emitió y notificó una *Orden* dando por sometida la controversia para su consideración.[6] Luego, en esa misma fecha, la recurrida presentó otra *Moción en Oposición a Sentencia Sumaria*, en la cual reiteró los planteamientos expuestos en su primera oposición.[7] Además, en esta ocasión, aceptó los hechos núms. 1, 2, 3, 7, 8, 9, 10, 11 y 12, y aceptó con aclaración el hecho núm. 13. Sin embargo, dicha oposición tampoco cumplió con los requisitos establecidos en la Regla 36.3(c) de Procedimiento Civil, *supra*, ni con la jurisprudencia interpretativa aplicable.

Por otra parte, el 4 de febrero de 2026, la señora Negrón presentó una moción solicitando la conversión del procedimiento sumario a uno ordinario, alegando la existencia de circunstancias excepcionales que justificaban dicha conversión.[8] Ante ello, el 5 de febrero de 2026, la peticionaria presentó una oposición a dicha solicitud.[9] Atendida la solicitud, el 10 de febrero de 2026, el TPI

---

[6] *Véase*, Entrada Núm. 23, SUMAC TPI.
[7] *Véase*, Entrada Núm. 24, SUMAC TPI.
[8] *Véase*, Entrada Núm. 26, SUMAC TPI.
[9] *Véase*, Entrada Núm. 28, SUMAC TPI.

emitió una *Orden* declarándola No Ha Lugar al concluir que la controversia ya se encontraba sometida ante su consideración.[10]

Examinados los escritos presentados junto con la prueba documental, el 24 de febrero de 2026, el TPI dictó una *Resolución* que se notificó el 25 de febrero de 2026.[11] En primer lugar, formuló unas determinaciones de hechos. Luego, expuso que, los siguientes hechos estaban en controversia:

1. ¿En qué consistió el alegado plan de restructuración y reorganización implementado por la querellada?

2. Si el plan de restructuración y reorganización justificaba el despido de la parte querellante.

3. Si el patrono tomó en consideración el criterio de antigüedad dentro de la clasificación ocupacional al momento de realizar el despido de la parte querellante.

4. Las funciones de la querellante vis a vis las de los empleados retenidos, a los fines de conocer si la empresa estaba obligada a retenerla por razón de su antigüedad.

Particularmente, señaló que, aunque Thompson Construction alegó que atravesaba dificultades económicas que motivaron un plan de reestructuración, del expediente no surgía evidencia suficiente que demostrara la existencia de dicho plan de reorganización, ni cómo este justificó específicamente el despido de la recurrida. Asimismo, indicó que la peticionaria no presentó evidencia acreditativa que permitiera establecer la utilidad del supuesto plan de reorganización ni el nexo causal entre las alegadas pérdidas económicas y el despido.

Indicó que examinó el documento titulado "Net Profit/Loss by Year", presentado por la peticionaria para sustentar las alegadas pérdidas económicas. No obstante, concluyó que dicho documento

---

[10] *Véase*, Entrada Núm. 31, SUMAC TPI.
[11] *Véase*, Entrada Núm. 33, SUMAC TPI.

no contenía firma ni evidencia que acreditara su procedencia o autenticidad, aparentando haber sido preparado por la propia empresa. Por tal razón, determinó que el documento no era admisible en esta etapa procesal mediante el mecanismo de sentencia sumaria.

De igual forma, expresó que existía controversia material de hechos respecto a si el patrono consideró el criterio de antigüedad dentro de la clasificación ocupacional al momento de realizar el despido. Puntualizó que de la evidencia presentada no se podía determinar si el patrono cumplió con su deber de retener con preferencia a los empleados de mayor antigüedad, ni si la recurrida era de menor antigüedad dentro de su clasificación ocupacional.

Además, indicó que era necesario comparar las funciones de la señora Negrón con las de los empleados retenidos, así como evaluar las cualificaciones, clasificaciones de puestos, funciones y complejidad de las tareas, aspectos que no habían quedado claros en el expediente y que requerían mayor análisis probatorio. A la luz de lo anterior, concluyó que existían hechos materiales en controversia que impedían resolver el caso mediante el mecanismo de sentencia sumaria. Por ello, aclaró que en esta etapa no está adjudicando si el despido fue o no injustificado, ya que corresponderá a las partes presentar prueba en su momento para sustentar sus respectivas alegaciones. En consecuencia, el determinó que no procedía adjudicar la causa de acción de forma sumaria, y declaró No Ha Lugar la solicitud de sentencia sumaria presentada por Thompson Construction.

Inconforme con este dictamen, el 9 de marzo de 2026, Thomson Construction presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> **Erró el TPI al determinar que existen controversias de hechos que impiden que se dicte sentencia sumaria a favor de la Peticionaria.**

**Erró el TPI al no dictar sentencia sumaria desestimando el caso.**

**Erró el TPI al no aplicar la doctrina establecida en <u>Segarra Rivera v. Int'l Shipping, et al.</u>, 208 DPR 964 (2022), que establece los criterios adjudicativos en un despido por una reorganización empresarial bona fide.**

**Erró el TPI al no aplicar la "Ley de Transformación y Flexibilidad Laboral" y lo resuelto en <u>Ortiz Ortiz v. Medtronic</u>, 209 DPR 759 (2022), a los fines de que el peso de la prueba en casos de despido injustificado recae en el empleado.**

Cabe precisar que, junto al recurso de epígrafe, la peticionaria presentó una *Moción Urgente en Auxilio de Jurisdicción* [...] solicitando la paralización de los procedimientos ante el TPI hasta tanto resolviéramos la controversia ante nuestra consideración.

Examinado el recurso que nos ocupa, y con el propósito de lograr el "más justo y eficiente despacho" del asunto ante nuestra consideración, prescindimos de términos, escritos o procedimientos ulteriores. Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, pág. 15, 216 DPR __ (2025).

II.

**-A-**

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró*, 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo

para atender un *certiorari* no es absoluta. Íd. Esto ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial esta inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de las Reglas de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

En otros términos, la Regla 40 del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 141, pág. 63, 215 DPR ____ (2025), enmarca los criterios que debe evaluar este tribunal al expedir un auto de *certiorari.* La aludida regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró,* supra, pág. 335. La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones discrecionales del Tribunal de Primera Instancia cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago,* 176 DPR 559, 581 (2009).

**-B-**

En esencia, el principio rector de las Reglas de Procedimiento Civil es proveerles a las partes envueltas en un pleito legal, una solución justa, rápida y económica en todo procedimiento. Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, R.1. El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, hace viable este objetivo en aquellos casos en que surja de forma clara que no existen controversias materiales de hechos que requieren ventilarse en un juicio plenario y el derecho así lo permita.

Conforme a la Regla 36.3 (e) de Procedimiento Civil, *supra,* se dictará sentencia sumaria "si las alegaciones, deposiciones, contestaciones e interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho

esencial y pertinente, y, además, si el derecho aplicable así lo justifica". A estos efectos, el foro judicial tiene la potestad para disponer de asuntos pendientes sin la necesidad de celebrar un juicio, esto debido a que lo que restaría sería aplicar el derecho a los hechos no controvertidos. *Roldan Flores v. M. Cuebas et al.,* 199 DPR 664, 676 (2018).

Es menester destacar que, solo procede dictar sentencia sumaria cuando surge claramente que el promovido no puede prevalecer y que el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. *Mejías et al. v. Carrasquillo et al.,* 185 DPR 288, 299 (2012). Por lo tanto, no procede dictar sentencia sumaria cuando no existe una clara certeza sobre todos los hechos materiales en la controversia. Íd. Aun así, "[c]ualquier duda no es suficiente para derrotar una moción de sentencia sumaria, sino que tiene que ser una cuestión que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes". *Aponte Valentín V. Pfizer Pharm. et al., LLC*, 208 DPR 263, 277 (2021).

La Regla 36.2 de Procedimiento Civil, *supra,* permite que cualquier parte presente una moción, basada en declaraciones juradas, o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación. Al solicitar dicho remedio, la parte que promueve la sentencia sumaria "deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material, o sea, sobre ningún componente de la causa de acción". *Mun. de Añasco v. ASES et al.,* 188 DPR 307, 310 (2013).

Por su parte, la parte que se opone a la sentencia sumaria no puede tomar una actitud pasiva y descansar en las aseveraciones o

negaciones consignadas en su alegación. *Roldán Flores v. M. Cuebas et al., supra,* pág. 677. Por el contrario, esa persona viene obligada a enfrentar la moción de su adversario de forma tan detallada y especifica como lo ha hecho el promovente en su solicitud puesto que, si incumple con lo antes mencionado corre el riesgo de que se dicte sentencia es su contra. *SLG Zapata- Rivera v. J.F. Montalvo,* supra, pág. 432. Específicamente, la Regla 36.3 de Procedimiento Civil, *supra,* expone los criterios que debe cumplir la parte que se opone a la moción de sentencia sumaria. Al amparo de dicha regla, en la oposición a la solicitud de sentencia sumaria el promovido debe, como parte de su carga desglosar los hechos sobre los que aduce que no existe controversia, y, además para cada uno de ellos debe especificar la página o párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya.

En síntesis, no procede dictar sentencia sumaria cuando: (1) existen hechos materiales y esenciales en controversia; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción de sentencia sumaria una controversia real sobre algún hecho material y esencial; (4) como cuestión de derecho no procede. *Pepsi-Cola v. Mun. Cidra,* 186 DPR 713, 757 (2012).

Ahora bien, según *Verá et al. v. Dr. Bravo,* 161 DPR 308, 334-335 (2004) este Foro Apelativo utilizará los mismos criterios que el TPI al determinar si procede una sentencia sumaria. Sin embargo, el Tribunal Supremo especifica que, al revisar la determinación de primera instancia sólo podemos considerar los documentos que se presentaron ante el TPI. Íd. Además, sólo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. Íd. Es decir, no podemos adjudicar los hechos materiales y esenciales en disputa, ya que esta tarea le corresponde al TPI. Íd.

Por otro lado, en *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 118 (2015), el Tribunal Supremo estableció que al revisar una determinación del TPI en la que se concedió o denegó una moción de sentencia sumaria debemos: (1) examinar de *novo* el expediente; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y con los discutidos en *SLG Zapata-Rivera v. J. Montalvo, supra;* (3) en el caso de una revisión de una sentencia dictada sumariamente, debemos revisar si en realidad existen hechos materiales en controversia, y de haberlos, exponer concretamente cuáles están en controversia y cuáles no; y (4) de encontrar que los hechos materiales no están en controversia, debemos revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho. *Rivera Matos, et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020).

## III.

Nos corresponde justipreciar si debemos ejercer nuestra facultad discrecional al amparo de los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, *supra.* Luego de examinar el expediente a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra*, y de la bien fundamentada *Resolución* del TPI, no identificamos razón por la cual este Foro deba intervenir. Ello, ya que no se presentan ninguna de las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios o postsentencia en los que el TPI haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. Reiteramos que en el recurso que aquí atendemos no se nos ha demostrado que haya alguno de estos escenarios.

IV.

Por los fundamentos antes expuestos, No Ha Lugar la *Moción Urgente en Auxilio de Jurisdicción* [...] y **denegamos** el recurso de epígrafe.

**Notifíquese Inmediatamente.**

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
